**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DAROLD J. ANDERSON** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 05-6477** |
| **WARDEN COOPER,** **AVOYELLES CORRECTIONAL** **CENTER** | * | **SECTION: "S"(6)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

1

## **Procedural History**

Petitioner Darold J. Anderson, a prisoner incarcerated in the Avoyelles Correctional Center, Cottonport, Louisiana, seeks federal habeas corpus relief from his January 9, 2001, conviction for aggravated battery after a judge trial.  Anderson also seeks federal relief from his October 17, 2001, adjudication as a second felony offender and sixteen year sentence.[1]  The attorney for petitioner timely moved to take an appeal.  Petitioner directly appealed his conviction and sentence on April 15, 2002, to the Louisiana Court of Appeal, Fifth Circuit.[2]  The Fifth Circuit affirmed the conviction and sentence.  The case was remanded to the trial court to send appropriate written notice to the petitioner regarding the prescriptive period to take post-conviction relief.[3]

On August 21, 2002, petitioner mailed an application for supervisory and/or remedial writs to the Louisiana Supreme Court.  The application was received on October

---

[1]See State Record, Vol. 1 of 3, Minute Entries dated January 9, 2001, and October 17, 2001.  **State v. Darold Anderson,** No. 00-5002 "E," 24th Judicial District Court, Parish of Jefferson, State of Louisiana.

[2]**State v. Anderson,** No. 02-KA-0272 (La. App. 5th Cir. April 15, 2002)(See State Record, Vol. 2 of 2 for copy of Brief.  The issues were excessive sentence and erroneous admission of other crimes evidence).

[3]**State v. Anderson,** 824 So.2d 517 (La. App. 5th Cir. July 30, 2002).

2

11, 2002, and filed under docket No. 2002-KO-2519.[4]  The application was denied on June 27, 2003.[5]

Petitioner filed an application for post-conviction relief (PCR) in the state district court on August 18, 2003.[6]  The court denied the application for PCR on August 22, 2003.[7]  Thereafter, on October 6, 2003, petitioner filed a writ application in the Louisiana Court of Appeal, Fifth Circuit.  The application was denied on October 8, 2003.  The court said:  "On the presentation, the application discloses no error in the trial court's ruling of August 22, 2003, on relator's Application for Post-Conviction Relief.  Accordingly, this writ application is denied."[8]  On November 4, 2003, petitioner filed a writ application post

---

[4]See State Record, Vol. 1 of 3, Letter from Clerk of Louisiana Supreme Court, dated October 11, 2002.  The post mark was August 21, 2002.

[5]**State of Louisiana v. Darold J. Anderson,** 847 So.2d 1254, No. 2002-KO-2519 (La. June 27, 2003).

[6]See State Record, Vol. 1 of 3, Tab 4.  The claims presented were:  unlawful entry; ineffective assistance of counsel and denial of a fair and impartial trial.

[7]See State Record, Vol. 1 of 3, Tab 5, for a copy of ruling.  The claims presented were: (1) the conviction was obtained pursuant to an unlawful entry; (2) ineffective assistance of counsel; and, (3) denial of a fair and impartial trial as he was forced to remain in shackles during trial.

[8]**State of Louisiana versus Darold Anderson,** No. 03-KH-1170, (La. App. 5th Cir. Oct. 8, 2003).  See State Record, Vol. 1 of 3, Tab 6 for a copy of the ruling.

marked October 21, 2003, in the Louisiana Supreme Court under No. 2003-KH-3040.[9]  The

writ application was denied on November 24, 2004.[10]

       Petitioner signed the declaration on his federal application for habeas corpus

relief on November 17, 2005.  The envelope containing the application was mailed 11/30/05.

The application was filed by the Clerk of Court on December 16, 2005.  In accordance with

the federal "mailbox rule," petitioner's federal application was filed on November 17, 2005,

the day he signed it and presented it to prison authorities for mailing.[11]  Petitioner filed a

supplemental brief on December 28, 2005.  The claims presented in the federal application

and supplemental brief are virtually identical.  They are:  (1) unlawful entry, search and

seizure of clothing iron in violation of Fourth Amendment; (2) excessive force used to gain

---

[9]See State Record, Vol. 1 of 3, Tab 8, for a copy of the Letter of the Clerk of the Louisiana Supreme Court dated November 4, 2003.

[10]**State ex rel. Darold Anderson v. State of Louisiana,** No. 2003-KH-3040 (La. Nov. 24, 2004).  See State Record, Vol. 1 of 3, Tab 9, for a copy of the ruling.

[11]This November 17, 2005, filing date was ascertained via the Court's use of the "mailbox rule."  Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  **Cooper v. Brookshire**, 70 F.3d 377, 379 (5th Cir. 1995).  Generally, the date a prisoner signs his petition, in this case, November 17, 2005, is presumed to be the date he delivered it to prison officials for mailing.  *See* **Colarte v. LeBlanc**, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); **Magee v. Cain**, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); **Punch v. State**, 1999 WL 56279, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

entry and warrantless arrest in violation of Fourth Amendment; (3) ineffective assistance of counsel; (4) denial of right to a fair and impartial trial; and, (5) insufficient evidence.

The State's response in opposition to petitioner's application was filed on February 17, 2006. The State argues that the application should be dismissed because petitioner failed to exhaust all of his federal claims in the state's highest court. Specifically, the State argues that petitioner failed to exhaust his claim that excessive force was used to gain unlawful entry and his claim of insufficient evidence. Petitioner concedes that he did not exhaust the insufficient evidence claim in the highest state court. On February 22, 2006, this Court ordered petitioner to provide documentary evidence showing that his federal claims have been presented to the Louisiana Supreme Court. Petitioner was also ordered to present this Court with adequate justification, i.e., "cause and prejudice attributable thereto," to establish that exhaustion should be excused. In the event that petitioner conceded that he failed to exhaust any claims, he was to indicate whether he wished to abandon his unexhausted claims and proceed on his exhausted claims.

Petitioner claims that his failure to exhaust his insufficient evidence claim should be excused because of cause and prejudice due to ineffective assistance of counsel. Petitioner argues that his appellate counsel's "inadequate, ignorance or oversight as well as legal programs" constitute cause for his claim being in procedural default. (See Federal Record, Doc. #1, Petition, page 6, Paragraph 13; Also see, Doc. #13, Response in Opposition

to Dismiss Writ of Habeas Corpus, page 3 of 10, Paragraph 1).  Additionally, petitioner

claims that his trial counsel was ineffective because he failed to file a motion to suppress

evidence.  (See Federal Record, Doc. #1, Brief for Habeas Corpus, page 11 of 23, Statement

of Issues, Paragraph 3).

Petitioner did not address the State's exhaustion position with respect to the

claim that police used excessive force, which resulted in an unlawful entry and warrantless

arrest under the Fourth Amendment.  The excessive force claim was not presented until it

evolved from the first claim.

Review of the state record shows that petitioner's first claim on post-conviction

before the state district court was as follows:

> "Petitioner contends his expection of privacy to his motel room
> was violated by the warrantless and nonconsensual intrusion and
> entry by Deputy Scott Vinson:  constituting a violation of the
> Fourth Amendment to the United States Constitution."

(See State Record, Vol. 1 of 3, Tab 4, Memorandum in Support for Post-Conviction Relief,
page 3.)

Petitioner raised his first claim in the Louisiana Court of Appeal, Fifth Circuit

and in the Louisiana Supreme Court in his briefs as follows:

> "Appellant contends his expection to privacy to his motel room
> was violated by the warrantless and non consensual intrusion
> and entry by Deputy Vinson; constituting a violation of the
> Fourth Amendment Clause to the United States Constitution."

(See State Record, Vol. 1 of 3, Tab 7, Appeal Brief on Behalf of Darold Anderson, page 5, Paragraph E.  Also see State Record, Vol. 1 of 1, Supplemental Appeal Brief of Darold Anderson, page 5, Paragraph E.)

Review of the record shows that the above claims are virtually identical.  The State argues that petitioner's first claim, as now presented in the second federal claim, was not presented in a procedurally proper manner because "the first claim started as an unlawful entry/invasion of privacy claim in the state district court and was presented as an unlawful entry/invasion of privacy/<u>excessive force</u> claim in the Louisiana Supreme Court.  (See Federal Record, Doc. No. 11, page 9, Response in Opposition to Granting Writ of Habeas Corpus.)  Further study of the record shows that the <u>excessive force</u> allegation[12] was presented by the petitioner in the argument sections of his briefs to the Louisiana Court of Appeal, Fifth Circuit and to the Supreme Court of Louisiana.  The <u>excessive force</u> allegation was not presented to the trial court.  Therefore, the <u>excessive force</u> claim has not been properly exhausted.  See **Baldwin v. Reese,** 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (March 2, 2004), wherein the Court stated:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'"

---

[12]See State Record, Vol. 1 of 3, page 5 and Supplemental Vol. 1 of 1, page 5, of Appeal Briefs, page 5 argument on assignment of error one, where the following statement was made in pertinent part:  "The appellant contends, more specifically, Deputy Vinson's illegal entry into his motel room, coupled with his use of <u>excessive force</u> of authority in forbidding the appellant to close his door, absent exigent circumstances, constitutes a violation of the Fourth Amendment..."

**Duncan v. Henry,** 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)*(per curiam)* (quoting **Picard v. Connor,** 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.  **Duncan, supra,** at 365-366, 115 S.Ct. 887; **O'Sullivan v. Boerckel,** 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). ...

Anderson has failed to exhaust available state court remedies with respect to his excessive force claim and the time for him to do so has expired under LSA-C.Cr.P. Art. 930.8 (establishing a two-year prescriptive period for state prisoners to seek post-conviction relief).  That being the case, the Court is procedurally barred from considering that claim. **Glover v. Cain,** 128 F.3d, 900, 902 (5th Cir.1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811 (1998); **Nobles v. Johnson,** 127 F.3d 409, 420-23 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845 (1998); **Sones v. Hargett,** 61 F.3d 410, 416 (5th Cir. 1995).  Only if Anderson could demonstrate cause and prejudice for his procedural default or establish a fundamental miscarriage of justice, would the Court be able to review the merits of his excessive force claim.  **Coleman v. Thompson,** 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991).  Anderson has failed to meet the requirement of **Coleman v. Thompson**.  Moreover, the excessive force claim is procedurally barred and this Court will not address the merits of the claim.

Petitioner has failed to present the court with adequate justification, cause and prejudice, attributable thereto, to establish that exhaustion of his claim of insufficient evidence should be excused because of ineffective assistance of his counsel.  For starters, petitioner's claim that his attorney failed to file a motion to suppress is unfounded and is not supported by the record.  Petitioner's counsel, in fact, filed a motion to suppress the evidence. (See State Record, Vol. 1 of 3, pages 12-13.)  Moreover, petitioner's allegation that his counsel's  ineffective assistance caused him prejudice and should constitute cause for his failing to exhaust his insufficient evidence claim is not justified.

Although ineffective assistance of counsel can constitute cause sufficient to overcome a procedural bar, the ineffectiveness itself must rise to the level of a Sixth Amendment violation.  **Romero v. Collins,** 961 F.2d 1181, 1183 (5th Cir. 1992).  Moreover, because counsel's ineffectiveness itself constitutes an independent constitutional violation, the allegation of ineffectiveness must have first been presented to and exhausted in the state court system like any other constitutional claim.  **Edwards v. Carpenter,** 529 U.S. 446, 451–452, 120 S.Ct. 1587, 1591 (2000).  Petitioner did not present an ineffective assistance of counsel claim based upon his counsel's failure to file a claim of insufficient evidence. Petitioner brought his insufficient evidence claim on post-conviction based upon allegations that his counsel failed to file a motion to suppress Deputy Scott Vinson's testimony and any

evidence seized after the Fourth Amendment violation.  (See State Record, Vol. 1 of 3, Tab

3, page 6 of Petition referring to Memorandum page 9, claim two.)

The state district court addressed petitioner's claim of ineffective assistance in

its Order dated August 22, 2003, on petitioner's application for post-conviction relief as

follows, in pertinent part:

> In his second assignment of error, the defendant alleges ineffective assistance of counsel.  The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in **Strickland v. Washington,** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.

The Louisiana Supreme Court addressed this very issue in **State v. Strahan,** 325 So.2d 231 (La. 1975).

> "Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at the trial.  We do not agree.  These charges are either leveled at decisions made by counsel during the heat of trial, the correctness of which cannot be determined by hindsight, or the validity of which is not evident from the record."  **Id.** at 233.

The defendant's claims are essentially with his counsel's alleged failure to file a motion to suppress evidence.  However, a review of defendant's records indicates that defendant's counsel did in fact file a motion to suppress along with several other motions.  Moreover, these claims are basically trial

10

tactics based on the criteria established by the Supreme Court in **Strahan.** According to **Strahan,** an attorney's decisions as to trial tactics do not rise to the level of ineffective assistance of counsel.  Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics according to **Strahan** and under the **Strickland** test, the defendant's claim must be dismissed for failure of the defendant to meet the two-prong test.

(See State Record, Vol. 1 of 3, Tab 5, Order, August 22, 2003, **State of Louisiana v. Darold Anderson,** No. 00-5002, Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana.)

Accordingly, petitioner failed to show that his counsel provided ineffective assistance of counsel, therefore, petitioner's claim of insufficient evidence must be dismissed.  Petitioner has not shown cause and prejudice which justified excusing his insufficient evidence claim from the exhaustion requirement.

Anderson has failed to file his insufficient evidence claim in any state court and the time for him to do so has expired under LSA-C.Cr.P. Art. 930.8 (establishing a two-year prescriptive period for state prisoners to seek post-conviction relief).  That being the case, the Court is procedurally barred from considering that claim.  **Glover v. Cain,** 128 F.3d, 900, 902 (5th Cir.1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811 (1998); **Nobles v. Johnson,** 127 F.3d 409, 420-23 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845 (1998); **Sones v. Hargett,** 61 F.3d 410, 416 (5th Cir. 1995).  Only if Anderson could demonstrate cause and prejudice for his procedural default or establish a fundamental miscarriage of justice, would the Court be able to review the merits of his excessive force claim.  **Coleman v. Thompson,** 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991).  Anderson

11

has failed to meet the requirement of **Coleman v. Thompson**.  Moreover, the insufficient evidence claim is procedurally barred and this Court will not address the merits of the claim. Therefore, petitioner has only three claims to be addressed.  They are:  claim 1, unlawful entry, search and seizure of clothing iron in violation of the Fourth Amendment; claim 3, ineffective assistance of counsel; and, claim 4, denial of a fair trial

### Statement of Fact[13]

At trial, Deputy Scott Vinson of the Gretna Police Department testified that on June 19, 2000, he responded to a call regarding a simple battery at the Pinnacle Motel on the Westbank Expressway.  Around midnight, the deputy, accompanied by the alleged victim, knocked on defendant's motel door.  When defendant opened the door, the victim confirmed that defendant was the perpetrator and then left pursuant to the officer's instruction. Defendant became verbally abusive, making threats against the officer.

Defendant then attempted to close the door.  There was a brief physical struggle in the doorway, but Deputy Vinson was able to keep the door open.  Vinson felt physically threatened, so he called for additional officers.  Defendant threw an unknown object through the window of the room.  Defendant then picked up a clothes iron and swung it by the cord.  Vinson raised his arm to protect himself, and the iron struck his left forearm.

---

[13]The Statement of Fact was taken from the opinion issued in **State of Louisiana v. Darold J. Anderson,** 824 So.2d 517, 519-520 (La. App. 5th Cir. July 30, 2002) after review of the trial transcript.  A copy of the opinion is contained in the State Record, see Supplemental Volume 1 of 1.

Vinson considered the iron to be a dangerous weapon, and a threat to his safety.  He drew his gun, and ordered defendant to put down the iron.  Defendant shouted more threats at Vinson.  When the deputy repeated his order, defendant put down the iron.  Additional police units arrived at the scene, at which time defendant was placed under arrest.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28, United States Code, Section 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under Title 28, United States Code, Section 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  **Hill v. Johnson**, 210 F.3d 481, 485 (5th Cir. 2000) cert. denied, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed2d 1004 (2001).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

**Williams v. Taylor**, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); **Hill**, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Hill**, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

### Unlawful Entry, Search and Seizure

Petitioner claims that his conviction was obtained as the result of Deputy Scott Vinson's unlawful entry and seizure. Petitioner suggests that the clothing iron seized from his motel room was the result of an unlawful entry, search and seizure in violation of the constitutional protection afforded to him under the Fourth Amendment. Petitioner also maintains that he did not strike anyone with the clothing iron.

Petitioner's ability to obtain federal habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly limited by the United States Supreme Court's decision in **Stone v. Powell**, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In **Stone**, 428 U.S. at 494, the United States Supreme Court held that a state prisoner is not entitled to federal habeas relief on the ground that evidence obtained in an unconstitutional manner was introduced at trial as long as the State provided "an opportunity for full and fair litigation" of his Fourth Amendment claim. See also **Davis v. Blackburn**, 803 F.2d 1371, 1372 (5th

14

Cir. 1986).  There is no evidence, in the instant matter, to suggest that petitioner was not afforded such an opportunity.

Even without the obstacle, presented under **Stone**, **supra**, to attaining federal habeas corpus relief, the instant claim is without merit.  Petitioner's Fourth Amendment claim was first brought in the state district court in connection with his application for post conviction relief.  In addressing the claim the district court said, in pertinent part:

Defendant claims the following assignments of error:

1.   His conviction was obtained by an unlawful entry in violation of the Fourth Amendment.
. . .

In his first assignment of error, the defendant contends that his conviction was obtained pursuant to an unlawful entry.  More specifically, defendant alleges that when the officer knocked on his motel door, it constituted an illegal entry.  However, defendant has failed to provide this court with the legal jurisprudence necessary to support his allegation.  Moreover, defendant admits that following the officer's knock, he granted the officer permission to enter his room.  Additionally, the Louisiana Fifth Circuit Court of Appeal in **State v. Haywood,** 783 So.2d 568 (La. App. 5 Cir. 2001) held "that knocking on a motel door does constitute an investigatory stop and does not require reasonable suspicion for knocking on the door is [an] age old request for permission to speak to [the] occupant, and when the door is opened in response to [a] knock, it is a consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved."  Furthermore, the defendant pled guilty in the instant case, therefore, this claim is also moot.

15

(See State Record, Vol. 1 of 3, Tab 5, August 23, 2003, **State of Louisiana v. Darold Anderson,** No. 00-5002, Twenty-Fourth District Court, Parish of Jefferson, State of Louisiana.  Review of the state record shows that petitioner went to trial.  He did not plead guilty.)

Federal habeas review is limited to questions of constitutional dimension.  *See generally* **Jernigan v. Collins,** 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); **Castillo v. Johnson,** 141  F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  Federal jurisprudence permits officers to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity.   **Terry v. Ohio,** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  Under **Terry v. Ohio,** while a warrantless seizure not based on probable cause is generally invalid, an investigatory detention is lawful if it is based on reasonable suspicion. See **Terry v. Ohio,** 392 at 20-21.  The court noted the importance of balancing the need to search (or seize) against the invasion which the search entails to determine whether a search or seizure is lawful.  (Also see **United States v. Arviz,** 534 U.S. 266, 273 (2002) where the court said "The Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot'".)

On the other hand, petitioner argues that the Fourth Amendment prohibits a warrantless entry into a suspect's home in order to make a routine felony arrest in the

absence of valid consent or exigent circumstances.  See **Payton v. New York,** 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 639 (1980).  In determining whether exigent circumstances justify a warrantless entry, courts examine the totality of circumstances during the period immediately preceding the search.  See **United States v. Howard,** 106 F.3d 70, 74 (5th Cir. 1997).  **United States v. Reed,** 935 F.2d 641, 643 (4th Cir. 1991).  Also see **United States v. Reed,** 935 F.2d 641, 643 (4th Cir. 1991).  (An exigency claim is examined from the totality of circumstances as they would appear to a reasonable and prudent person at the moment of entry.)

Deputy Scott Vinson testified that he responded to a call regarding an alleged simple battery reportedly having occurred at the Pinnacle Motel.  (See State Rec. Vol. 2 of 3, Trial Transcript, January 9, 2001, pages 123-124, hearinafter referred to as T. ___.)  The following excerpts of Deputy Vinson's testimony (T. 126-128) shows what led to the pertinent arrest, search and seizure:

**BY MR. CREDO:**

Q.  As a result of your knocking on the door, did you confirm that Mr. Anderson was the person that you were looking for?

A.  That's correct, sir.

Q.  At that point in time, was the person that was with with (sic) you, did he leave?

A.  I instructed him to leave, correct, sir.

17

Q.  Tell us what happened from that point on?

A.  As soon as Mr. Anderson opened the door, he became threatening towards me.  Telling me I better get the "f" away from him.  I better get out of his room.  Get away from his room.  Made reference to me being a white boy.  He was going to hurt me.  I better call for backup.  And all I simply wanted to do was investigate the original crime.  I was actually, at that point, I was training another officer who was back at 200 5th Street.  My intention, sir, was to probably merely, at worse, issue a summons.  But he refused to cooperate with me, he refused to talk to me and he started threatening me right off the bat, immediately.

Q.  As a result of the defendant's actions, what happened next?

A.  We became involved in a physical encounter in the doorway. He attempted to slam the door on me and I didn't allow that to happen.  He hit me with the door.  We tussled briefly in the doorway.  He's strong out of this world.  So I was able to break away from him and I radioed for backup.

Q.  When you say, break away from him, does that mean that you physically touched each other, physical confrontation –

A.  We were mixing it up, yes, sir.

Q.  -- in the doorway –

A.  In the doorway –

Q.  -- of his room?

A.  –  correct, sir.

Q.  Tell us what happened after the physical confrontation in the doorway to his room?

18

A.  I was -- again, I was able to break away from him, call for backup.  I couldn't tell you because I couldn't locate it, there was an object thrown in my direction which struck the window of the room.  At that point, Mr. Anderson grabbed his iron, sitting immediately, that would be to his right on the little dresser or what have you.  He grabbed it immediately and started to swing it at me.

Q.  When you say an iron, can you be a little more specific?  What type –  is that like an ironing board iron?

A.  The kind you iron your clothes with.

Q.  When you say, he swung it at you, did he -- how did he physically do that?  What part did he hold and what part –

A.  He held the cord, sir, and like I said, it was one swift movement.  He grabbed it by the cord and just swung it right – like overhand.

Q.  What happened as a result of that?

A.  Well, I had simultaneously, I grabbed my weapon, took a step back and put my arm up to block the iron.  At which time, the iron struck me in the forearm.

Q.  At that time, based on your observation, did you consider the iron, swung at you, to be a dangerous weapon?

A.  Absolutely, sir.

Q.  Were you in fear of your safety at that moment?

A.  Absolutely, sir.

Q.  As a result of the iron striking your left forearm, what happened then?

19

> A.  Again, sir, I took a step back creating distance.  I drew my weapon on him and ordered him to drop it.  At that time, Mr. Anderson started shouting, he made, you know, other threatening references.  I know he was telling me, go ahead shoot me, go ahead shoot me, something to that effect.  I increased my verbal command or what have you.  I got a little stern and once again advised him to drop the iron, to which he complied.  He set the iron down.

(T. 126 - 128.)

The above testimony clearly established that Deputy Vinson was engaged in a lawful investigation of a criminal offense when he knocked on petitioner's door.  Petitioner opened the door and began using abusive language, tried to hit the deputy with the door, tussled with the deputy and threw an object at the deputy which broke a window.  The situation was exigent and the circumstances required Deputy Vinson to enter the motel room where petitioner ultimately hit him with a clothing iron.  The exigencies justified the warrantless entry into petitioner's motel room.  See **United States v. DeJesus-Batres,** 410 F.3d 154, 159 (5th Cir. 2005)(where the warrantless entry into a garage was lawful because police were told by freed hostages that more hostages might be in the garage).  Deputy Vinson had the victim of the complaint present with him when petitioner opened his door.  Therefore, Deputy Vinson had knowledge that petitioner had possibly been involved in a criminal offense and his presence at the door was valid.  The exigencies presented justified the warrantless entry, search and seizure.  Therefore, petitioner's claim is meritless.

### Ineffective Assistance of Counsel

Petitioner claims that his counsel provided ineffective assistance because counsel failed to litigate a claim of illegal entry into petitioner's motel room and because counsel failed to conduct meaningful cross examine of Deputy Vinson regarding the lack of medical evidence supporting that Deputy Vinson was injured.

In **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A convicted defendant seeking relief must demonstrate that counsel's performance was deficient <u>and</u> that the deficient performance prejudiced his defense. <u>See</u> **Strickland,** 466 U.S. at 697, 104 S.Ct. at 2069. If this Court finds that petitioner has made an insufficient showing as to either of these two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. **Id.**

Petitioner carries the burden of proof and must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> **Crockett v. McCotter,** 796 F.2d 787, 791 (5th Cir. 1986); **Matthewson v. King,** 751 F.2d 1432, 1441 (5th Cir. 1985). Under the deficient performance prong of the **Strickland** test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" **Lockhart v. Fretwell,** 506 U.S. 364, 371, 113

S.Ct. 838, 844, 122 L.Ed.2d 180 (1993)(quoting **Strickland,** 466 U.S. at 690, 104 S.Ct. at

2066).  "An attorney's performance, which enjoys a strong presumption of adequacy, is

deficient if it is objectively unreasonably."  **United States v. Acklen,** 47 F.3d 739, 742 (5th

Cir. 1995).  Petitioner must prove that the conduct of counsel fell below the constitutional

minimum guaranteed by the Sixth Amendment.  <u>See</u> **Styron,** 262 F.3d 438, 450 (5th

Cir.2001), <u>cert</u>. <u>denied</u>, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002).  Analysis

of counsel's performance must take into account the reasonableness of counsel's actions in

light of all the circumstances.  See **Strickland,** 466 U.S. at 689, 104 S.Ct. at 2065.  A claim

of ineffective assistance of counsel is a mixed question of law and fact.  **Moore v. Cockrell,**

313 F.3d 880, 881 (5th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 969, 123 S.Ct. 1768, 155 L.Ed.2d

526 (2003).

The first part of petitioner's claim centers on his counsel's failure to file a

motion to suppress the evidence.  This claim was addressed on pages 9 - 11 of this report

and the discussion is incorporated in this section of the report by reference.  The state trial

court properly addressed petitioner's claim, applied the correct federal law under **Strickland**

**v. Washington,** 466 U.S. 668, determined that petitioner's counsel filed a motion to suppress

evidence as well as several other motions, and determined that petitioner's counsel was not

ineffective.  The first part of the claim lacks merit.

Next the Court turns to petitioner's claim that his attorney was ineffective because counsel failed to meaningfully cross examine Deputy Vinson concerning whether or not he had any medical evidence showing his injury.  The trial court properly found that petitioner's counsel's trial decisions amounted to trial tactics and as such petitioner failed to meet the two prong test under **Strickland.**  (See pages 10-11 of this report.)

Moreover, review of petitioner's counsel's cross examination of Deputy Vinson concerning the injury caused by petitioner supports the trial court's conclusion:

**BY MS. GLORIOSO:**

Q.  What part of the iron hit you?

A.  That would - - well, that's going to be the hard part, ma'am.

Q.  You don't recall?

A.  I can only - - I mean it didn't leave a mark, it could have been the plastic part - -

Q.  That's fine, that's fine.

A.  - - it's irrelevant.

Q.  What - -  were there any marks on you, any injuries on you?

A.  No.

(See State Rec., Vol. 2 of 3, Trial Transcript page 141.)

It is clear from the above cross examination that counsel's decision not to question Deputy Vinson about whether he had any medical evidence supporting his injury

23

was a tactical decision.  Thus, petitioner failed to show that the trial court's decision amounted to an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  This claim is meritless.

### Denial of a Fair Trial

Petitioner claims that he was denied a fair and impartial trial in a fair tribunal in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Petitioner was tried by the judge and not by a jury.  He argues that the trial court improperly tried petitioner while he was in shackles which affected his presumption of innocence. Petitioner claims that the trial judge gave no reasons for denying his counsel's request that petitioner's shackles be removed during the trial.

A trial judge has discretion to order that a defendant be shackled and handcuffed during a jury trial.  The Fifth Circuit addressed the issue concerning the propriety of a trial court ordering a defendant shackled and handcuffed in the jury's presence in **Bigby v. Dretke,** 402 F.3d 551, 573 (2005).  The Fifth Circuit said, in pertinent part:

> Bigby next contends that the trial court erred by shackling him during the trial and allowing the jury to see him handcuffed. "While a defendant is entitled to the physical indicia of innocence, a court is justified in ordering him handcuffed and shackled during trial [when] there is danger of escape or injury to the jury, counsel, or other trial participants."  **Wilkerson v. Whitley,** 16 F.3d 64, 67 (5th Cir. 1994); *see also* **Holbrook v. Flynn,** 475 U.S. 560, 568-69, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525 (1986)(stating that shackling is permissible only when "justified by an essential state interest specific to each trial");

> **Illinois v. Allen,** 397 U.S. 337, 343-44, 90 S.Ct. 1057, 1061, 25
> L.Ed.2d 353 (1970)(opining that trial judges "must be given
> sufficient discretion" to ensure the "dignity, order, and decorum
> ... of all court proceedings" and concluding that binding and
> gagging an obstreperous defendant is constitutionally acceptable
> in some situations). ...

Furthermore, see **Deck v. Missouri,** 544 U.S. 622, 628, 125 S.Ct. 2007, 161

L.Ed.2d 953 (2005) where the Supreme Court held that the defendant was denied due process

when he was required to wear leg irons, handcuffs and a belly chain during his sentencing

proceeding.  Such use can be justified by an essential state interest such as physical security,

escape, prevention or courtroom decorum.

The **Deck v. Missouri** case can be distinguished from petitioner's case as no

jury was involved in his case.  As mentioned before, petitioner had a judge trial.

The state trial court addressed petitioner's claim on post conviction relief as

follows:

> Finally, the defendant claims that he was denied the right to a
> fair and impartial trial because he was forced to remain in
> shackles during trial.  This claim is also denied.  The defendant
> was not prejudiced in this matter because no jury was present.
> Further, the Court ordered the defendant to remain in shackles
> due to his history of violent behavior.  Moreover, a review of
> defendant's records indicates that the Court was justified in
> ordering that he remain in shackles during trial due to several
> violent threats made to his counsel before open court at his
> multiple bill hearing on May 18, 2001.  Furthermore, according
> to **State v. Calhoun,** 554 So.2d 127 (La. 2nd Cir. 3/30/99)
> "...exceptional circumstances may require the trial court to
> exercise its discretion to order restraint of a prisoner for reasons

25

> of courtroom security or order, or where a prisoner's past conduct reasonably justifies apprehension that he may attempt to escape ... ." For the foregoing reasons, defendant's claim is denied.

(See State Record, Vol. 1 of 3, Tab 5, Order, August 22, 2003.)

Review of the trial transcript supports the district court's decision to require petitioner to remain shackled during the judge trial.  (See State Record, Vol. 2 of 3, Trial Transcript, January 9, 2001, pages 112-113.  The Louisiana Court of Appeal, Fifth Circuit found no error in the district court's ruling.  (See page 3 of this report.)  This Court must presume that the above findings of fact to be correct absent a showing, by clear and convincing evidence, that said finding is incorrect.  See Title 28, United States Code, Section 2254(e)(1).  Anderson has failed to make such a showing, therefore, the court finds that Anderson was not denied a fair trial by virtue of the court's denial of his request to remove the shackles during a judge trial.  This claim lacks merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf on petitioner Darold J. Anderson, be **DENIED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __19th__ day of _____December_____, 2007.


LOUIS MOORE, JR.
United States Magistrate Judge